All right. I see both counsel. Good morning. Ms. Jacob, you may proceed. Thank you, Your Honor. May it please the court. John Henigan timely pled guilty, thereby saving the government from having to prepare for trial and expend those trial resources that it would otherwise have done. And for that reason, we believe that he was entitled to the motion under subsection B of the acceptance of responsibility guideline. The government asserts that in withholding the motion, it did not violate Mr. Henigan's due process right to be sentenced based on accurate information because Mr. Henigan's objections, in their words, sent the government on needless goose chases to support the PSR. And frankly, these just bottom line is these were not goose chases. Mr. Henigan, frankly, I think the government's conduct here in in the Mr. Mr. Henigan into sort of a Hobson's choice. He was forced to object when the government included multiple overdose death and overdose assertions in their offense conduct in the present report. And I think this is a good time to sort of look at the big picture here. What was really happening? When when we read these present reports in all these cases, the section that includes the offense conduct is factual information that the government provides to the present report writer and the present report writer puts it in the present report. Here, they provided multiple assertions that in large part, when Mr. Henigan sort of made that Hobson's choice to to object, right, they were they failed to prove they were unable to prove. In other words, in many respects, this was sort of the government's own doing these goose chases that that they claim they had to go off on to to prove the information in the present report. They just had overreached. They included information in that proffer to the present report writer that they were not able to. Mr. Henigan has a right to be sentenced based on accurate information, a constitutional right to be sentenced based on accurate information. And I think all of us, not just the defense, but certainly the court, the public and the government have an interest in that information being accurate. That's what was happening here. But the defense attorney clearly did not contest the withholding by the government of the third acceptance of responsibility point. And on the record, I understand that the government can withhold that. And so we've got a standard of review issue at the threshold here that were plain error review. And the scope of the government's discretion is is contested after Amendment 775. And we've got a circuit split on that question. And so that's not the sort of thing that is readily susceptible to plain error review. Well, I'm going to take that in two pieces, Judge. The first is whether it really should be that the defense attorney did not say, Judge, order the government to make the motion. There's nothing in the record like that. But the defense attorney did repeatedly in the record in her filings before the evidentiary hearing, that would be a docket entry 50, said that he asserted that he was entitled to all three points for acceptance of responsibility. Post hearing in her filing, again, requested all three points for acceptance of responsibility. In the conversations during the sentencing hearing about acceptance, at least indicated he's received nothing from the government on that point in light of the information that he proffered. And actually also requested at the end of the day, when the government continued not to move, requested that the judge credit him for the government's refusal to move. So I think, well, again, there's not a specific, Judge, order the government to do this. I think there were a lot of places in the record that you find the defense requesting and asserting that he's entitled to that motion. Then secondarily, if we are on plain error, I don't know if we are. The first question, of course, is, is there error? And I'll get to that in a moment. And I think it's pretty clear there was error here. And was it plain? So, well, let me start with, was there error? Let's start there. The plain language of subsection B is just that. It's pretty plain. It indicates if there is a timely notification of a defendant's intent to and then it says, thereby saving the government the effort of preparing for trial and their resources. That's the standard. That's the plain language. And I know in the Second Circuit's decision in Lee, which came even before the amendment 775, they say the plain language in B refers only to prosecution resources when the defendant timely pleads guilty. And the application note in amendment 775, excuse me, application note six, again, the plain language of that entire application note, which applies only to B, repeatedly talks about the timeliness of the defendant's acceptance or responsibility, whether it comes early in the case, that the government's in the best position to decide whether to file this motion because it involves them preparing for trial. All of the plain language in the application note and the plain language of subsection B talk about trial preparation. They do not talk about sort of other ways that the defendant can help save government resources or anything like that. The sentencing... If Hennigan made a false statement that he did not sell heroin, that a false denial of wrong conduct is not an interest identified in 3E1.1. Well, actually, I think that is true, Judge. I think that you got to remember that subsection A is the judge's decision, right? Subsection A is, did he accept responsibility? If there is a false or frivolous denial of relevant conduct, he's not even... We're never going to get to B. We're never going to get to B. And subsection A, where we're getting that language, false denial or frivolous objection, if you look at that, that's coming from application note 1A. And application note 1A, again, plain language, says in determining whether a defendant qualifies under subsection A, these are the appropriate considerations for the court. So we're never going to get to A, to B, excuse me, if there's been a false or frivolous denial. But I would say, Judge, even if, even if the government is correct that they can look anywhere in the acceptance of responsibility, the commentary, everything, we're going to ignore plain language and we're going to allow the government to look anywhere in the acceptance of responsibility section. It couldn't constitutionally in this case deny the motion for a frivolous or false denial has been said, are these objections made in good faith? And in this case, I don't, I can't even fathom how a court could find that John Hennigan's objections were frivolous, that were not made in good faith. The government came out accusing him of responsibility for multiple was all of his objections were sustained, all of them. Then on a motion for reconsideration, and of course, the court awarded him acceptance of responsibility. In other words, didn't find his objections to be frivolous or false. Then on a motion for reconsideration, the court did change its decision on one of the many allegations or assertions that the government had made and found him responsible for the one death. We have taken an appeal in this case on that factual finding. Now, I don't know if we'll win or not, right? I'm not here to say we, I am certain we will win, but I am certain that our appeal of that issue is non-frivolous. There is a lot to talk about in terms of the facts and the presentation that was made in those two days of hearings about whether that factual finding of responsibility is clear error. It's not frivolous. And so even if, again, Judge, the government is correct that we can ignore the plain language of subsection B, they can go far beyond the plain language of application note six in deciding when it believes the defendant should get this motion. Even if they can do that, and I would but even if they can, they cannot constitutionally do it here. Mr. Hennigan has a due process right to be sentenced based on accurate information. And had he not been able to object, he would have been sentenced based on responsibility for a series of overdose deaths that the government couldn't prove. And in fact, the district court in, I mean, I just, I found this so interesting. It's at appendix page nine of our brief. It is the court's first decision on what had been proved and what had not been proved. And the court is talking about one of these overdoses that the government wanted Mr. Hennigan to be responsible for. One of these assertions that they said they could prove in including it in the pre-sentence report. The agent, according to the court's decision, the agent made no effort during the investigation to try to tie that overdose death to anything about Mr. Hennigan. And the court ends that paragraph. It's the last sentence of the first paragraph on that page. The lack of interest, the court says, in verifying the identity of the speaks loudly and persuasively as a tacit acceptance by police of Mr. Hennigan's assertion that he was not the supplier of that heroin. Now, if he had not been able to object, he would have been stuck with these government assertions that he was responsible for this one. And there were many more just like it. That can't be. Mr. Jacobs, can I ask you, the debate here is on one level, on the offense level, and the ultimate sentence here was substantially above the calculated guideline level based on the finding of responsibility for Rausch's death. Given that, if we are applying plain error to this question about the third level, help me see how there might be the kind of prejudice to support plain error given the above guideline sentence. Well, as we included, Judge, in one of the sort of sub-issues on this, at the very least, the one level would have reduced the guideline range, let's sort of start there, eight months. And I know that doesn't sound like much to us when we talk about these incredibly lengthy sentences, but frankly, for my clients, every day that they're sitting in prison matters. Right? And so... I understand the change in the starting point, but I'm questioning just how clear it was that the starting point mattered given what Judge McDade ultimately did and why. Well, Judge, I would say I think the starting point always matters, and that's really what the cases all say, is that the sentencing guidelines have to be correctly calculated as sort of a first benchmark for the court to move from and whether they're going to sentence within the range or above or below. And so, I think from a prejudice standard, I understand it's only one level. I think the issue itself is incredibly important because, I mean, frankly, if the government can deny this motion on anything that it finds in the acceptance of responsibility guideline, for example, it could go into the application notes, again, under application note one and say that a defendant didn't voluntarily pay restitution before adjudication of guilt, and that's why we're not going to give him acceptance. Or he didn't voluntarily terminate or withdraw from criminal conduct before arrest, we're not going to give it to him. It's a really, as much as it feels small because it is this one level, I think it's a really important issue, and it's a really important issue to Mr. Hennigan, even if at the end of the day what that means is eight months, because there would have been at this eight-month swing between his starting point of the guidelines with and without that motion. I see that my time is expiring. If the court has no further questions, I would ask that the court vacate the sentence and remand for resentencing. Thank you. Mr. Kinstra. May I please the court? Good morning, Your Honors. Jeff Kinstra for the United States. The district court didn't commit clear error in finding the defendant responsible for Seth Rode's overdose death and the defendant's false denial of his own conduct, in fact, things that he had previously admitted in contributing to that death justify the government in withholding the motion for the third level for acceptance. Now, I'm happy to answer any questions about the court's factual findings, which certainly aren't clearly erroneous, but given that the defendant's focused on the third level, I'll start there. I would like you to address the judge's factual findings, if you would, on this Rode's death, because the findings, as I understand them, kind of a moving target in the series of orders that the judge issued and then trying to reconcile those orders with what the judge said at sentencing is also a bit of a moving target. So perhaps you can just give me in very simple terms what the judge did and did not conclude, because he clearly did not withhold the two-level acceptance of responsibility downward adjustment based on his discussion of the lack of causation evidence on the Rode's death. But then he later, at the end of the day, seems to have found Mr. Hannigan responsible for the Rode's death for purposes of the upward variance that everybody was calling a departure, which, you know, we've known for a very long time is the incorrect terminology. There are no such as departures anymore. The departure chapter of the sentencing guidelines manual can be used as a guide for a non-guideline sentence, either varying up or down, but all of you in the Central District should stop using that departure language, because it just injects all kinds of ambiguity into the transcripts that we're reviewing. But that's not the transcript we have here. So perhaps you could tell me what the government's interpretation of the findings is, your best interpretation, because it was a moving target and the wrong terminology was used. Yes, Your Honor. So I know in the last point that the court did use the term variance at the end, but to your substantive questions about the factual findings, the court certainly found that the defendant was responsible for the heroin that the victim ingested. He found that both in his initial order and his order on reconsideration. The court also found that the defendant was responsible for the crack cocaine. He, in fact, made that finding in the initial order, noting that they had smoked the crack cocaine together, he and O'Brien, in the car. And he reiterated that finding on the order on reconsideration. And so really the disconnect or the reason for the reconsideration was that the court had on its own injected the idea of the but-for causation and so on reconsideration, it recognized that both of the substances in question, in fact, came from the defendant. And so he was responsible for those substances. I'd also note in response to the defendant's suggestion that the court sustained all of his objections, that wasn't accurate. On the top of page two of the court's initial order, it overruled the defendant's objection that the heroin that the victim ingested came from the defendant. It agreed with paragraph 15 of the pre-sentence report that the defendant was responsible for that heroin. And so in the order on reconsideration, the court put those two findings together, basically, that he's responsible for the heroin, he's also responsible for the crack cocaine. And then it explicitly addressed the defendant's argument that perhaps some other substances enter the picture as well. It noted that the victim had no other source for heroin and also acknowledged the circumstantial evidence of other substances and paraphernalia found in the victim's room, but it found the evidence much stronger as to the fact that the victim both obtained and used both the crack cocaine and heroin that came from the defendant. And so it did find that the defendant was in fact responsible for both those substances and therefore he was responsible for the overdose theft. And as we understand it, is that, Mr. Kinstra, based on the timing in the comment, the timing meaning the crack cocaine was used first, the heroin was used later, and this call that comes in from Rhodes about how good the stuff is, is it, are those the factual bases for the finding? Yeah, so it's the fact that the victim actually sent the text message showing that he was satisfied with the product, which showed that he did in fact use the heroin. The autopsy, of course, showed that as well because it was in his system. The timing was more of a defense argument and that's what he's premised his appeal on, he's saying that if he was seen alive by his parents later that evening, then whatever he took around between 8 to 10 when he sent the message, the defendant says would not have caused his death. The record doesn't support that finding, but more important to that, it also shows and the court found that the victim had no other source for heroin. So whatever heroin he took was the heroin that came from the defendant. The court also didn't credit the arguments that any other So the court very clearly held to my reading that it was the defendant who was responsible for both these substances and that those were the substances that in fact caused the overdose death. Unless your honors have any more questions on that, I turn to the third level for acceptance. The first issue to address there is, of course, the standard of review, and the correct standard is only plain error, and that's because the defendant never asked the government to move for the third level. He never asked the court to order the government to do so. He never argued to the court that the government was withholding the motion for an improper reason, and another way to to conceptualize this is that the third level essentially doesn't come into play until the court has already held that the defendant's entitled to the first two. That's a threshold requirement, and at the bottom of page three of the court's order on reconsideration, what it said was the defendant is entitled to at least two levels for acceptance, but when it came to the conclusion of the sentencing hearing, the defendant didn't ask the government at that point to move for the third level, didn't ask the court to order it to do so, and when asked, and this is at page 256 of the transcript and page 13 of the defendant's appendix, the defendant confirmed that he had no other objections other than those the court had already moved on. So plainly, he wasn't alerting the court to the need for a ruling. He wasn't alerting the court that he was raising this argument and that there was something for it to do. That being the case, then he forfeited the arguments, and this court reviews only for plain error. I note as well on that topic that as the government noted in its response brief, two circuits have addressed this exact same situation. Both addressed only plain error review. The defendant hasn't addressed those cases, so he hasn't denied that this court would have to create a new circuit split in order to apply anything other than plain error review, and he necessarily then hasn't provided the justification for doing that. Now, turning to the merits, I think the first thing to note is that the defendant's entire argument here today assumes a premise that this court has rejected, which is that the criteria for granting a motion also constrain the government's discretion in deciding whether to make a motion. As this court has put it, the third level gives the government a power, not a duty, and so a reviewing court looks only to whether the government has acted for an unconstitutional reason. The defendant hasn't made an argument along those lines and hasn't shown that, and the fact that this court has already decided this issue is a significant factor because the question isn't how this court would write it on a blank slate. It's whether the defendant has justified altering this circuit's precedent. I note that even today after Amendment 775, there are six circuits that are in this circuit's camp. This circuit and five others that agree that a reviewing court looks only to whether there's an unconstitutional purpose. Now, I think three is the best count that take a narrower view and look to whether the defendant has made an objection in bad faith, but this court couldn't solve any circuits, but certainly there is a tension there, but this court at best could jump from the more favored side to the side with fewer courts, and so especially given that we're... Mr. Keenster, what's the government's position on proper interpretation of Amendment 775? Which circuits have it, right? The third and eighth circuits, certainly the eighth circuit, I think has the soundest interpretation, which views this amendment very narrowly. I think correctly that the amendment is only framed as guidance to the government. It says the government should not withhold, and the only caveat it adds is that the government should not withhold the motion for interests not identified in 3E1.1, but those interests are very broad. That includes 3E1.1 is, of course, the umbrella that includes acceptance generally, and the application of 1A speaks directly to the issue that we're addressing here, which is that a defendant is not accepting responsibility when he falsely denies or frivolously contests his relevant conduct at sentencing, so the Amendment 775 doesn't justify overturning this circuit's established precedent. So, Mr. Keenster, when you're referring to the eighth circuit, are you referring to the Jordan case in 2017 or a different case? I think Jordan most directly addressed this case. The eighth circuit has also addressed this in Gay and Brockman, but certainly the eighth circuit is very squarely in the circuit's camp, and there are minor variations among the circuits, but to my reading, it's a 6-3 split with this about the proper interpretation of the guideline if we assume that those criteria, in fact, govern the government's decision. It's important to note that the guideline requires that a defendant's guilty plea not only allow the government to avoid preparing for trial, but also that he allow the government and the court to efficiently allocate their resources, and that resource allocation has to have some meaning other than purely trial preparation and trial resources because Congress expressly amended this guideline in 2003 through the and whereas the guideline already required a defendant's guilty plea to allow the government to avoid preparing for trial, Congress inserted and created a new criteria relative to the government's allocation of resources. So, the defendant's argument would render that congressional amendment nullity, which I think really renders that result implausible, even if perhaps in another circumstance, we might just characterize this as a belt and suspenders sort of issue. The fact that Congress expressly amended the guideline to add this requirement really forecloses that interpretation. That's also consistent with the fact that the triggering language that the guideline speaks of is the defendant's notice of his intent to plead guilty. The reason is that the defendant's guilty plea is the only affirmative act that's required of the defendant in order to produce all those other benefits and to bring a case to its conclusion, that once a defendant pleads guilty, the probation office prepares the pre-sentence report, parties make their arguments at sentencing, the court imposes sentence and enters judgment, and so unless the defendant makes some other affirmative act that cuts off that causal effect, then it will be his guilty plea that has those three different effects that the guideline requires. And again, that's consistent as well with Amendment 775, which speaks broadly to the interests identified in 3D1.1, of which a defendant's false denial of relevant conduct is certainly one. And last, I'd like to address the defendant's factual arguments. He, on appeal, he's really, it seems like he's arguing more about the other objections that were sustained. But the fact that he had two other objections that were meritorious doesn't give him license to falsely deny his relevant conduct as to the Rhodes overdose death. And it's very important there that he wasn't objecting to causation at the time of the initial hearing. On pages seven to eight of the transcript, he clarified what his objections were, and they were as to his own conduct, things that he did. He said that he was objecting to the sentence in paragraph 15 of the pre-sentence report that said Rhodes obtained heroin from the defendant through O'Brien. He also, on page seven of the transcript, said that he was disputing that he put these drugs into the chain of distribution. So even though on appeal and later after reconsideration when the government or when the court raised causation, he's now false denial of relevant conduct is he was objecting as to his own conduct. He was falsely denying what he did and falsely denying things that he had previously admitted to, which included the fact that he was, during his brand interview, he admitted that during the same time period, he was dealing heroin to O'Brien. And so for him at sentencing then to object to that and say he didn't put these drugs in the chain of distribution, that he didn't deal drugs to O'Brien, who then gave them to Rhodes, was not a good faith objection. That was an attempt to minimize his culpability from bottom to top and really a failure to accept his own conduct and the consequences of that. Those are critical factors for court to consider. So the fact that he was denying that conduct falsely shows that he was not accepting responsibility, not willing to accept just punishment for his offense, which is what the background commentary in 3E1.1 talks about. He's, in fact, attempting to evade just punishment. I'd also note that that distinguishes this case from the interests that Judge Robner's concurrence in Davis were referring to, where there the issue was whether the government was asking for the defendant to execute a plea waiver or an appeal waiver, I'm sorry. And as Judge Robner noted in that decision, that has nothing to do with acceptance, that that's never been a concern within acceptance, the acceptance responsibility guideline. But a defendant's false denial of responsibility at sentencing has always been a concern. That's a critical factor. And the defendant was falsely denying and frivolously contesting his conduct as to Rhodes. So that justified the government and was holding the motion for the third level. The defendant, the remaining argument in the defendant's brief is waived. It's an argument about if the court adequately addressed his arguments in mitigation, he had an opportunity to request further explanation and didn't. So unless your honors have any further questions, the government would ask this court to affirm. Thank you very much. Ms. Jacobs, your time had expired, but I'll give you a couple extra minutes if you have something to say in rebuttal. Thank you. I'm going to start with the Jordan case just to address the courts. There obviously is a split here developing on this issue. However, even in the Jordan case, when the Eighth Circuit says that this denial of relevant conduct means the government had to expend resources and the court had to expend resources. And for that reason, they find that it was not improper. The concurrence in that case is that they need to rethink this third level reduction because of the plain language of application note six and the plain law talks about the government not permitting the government not to prepare for trial. And I think it's important too when we're talking about the change in the Protect Act to allow the government the authority to file this motion. I mean, even in the application note, it acknowledges and all of the history of that acknowledges that it was because the government is in the best position to say, did they prepare for trial or didn't they? That they are given the authority to make this motion. I'd also ask the court to really think about what is the purpose of B? Why do we have this separate subsection? The court has its responsibility to assess in a holistic way whether the defendant has accepted responsibility under and using the application note to do that. But this guideline is about contrition. We're supposed to be measuring the defendant's contrition. We're not measuring whether the defendant has helped the government in other ways save resources. Did the defendant take this down to the last possible moment? Did he want to hear what the government's evidence was? Did he want to hear who the witnesses were going to be against him? Did he want to see what co-defendants got for their sentences before he accepted his responsibility? That's what this is about. And that's why the trial preparation, sort of plain language in B, Judge Rovner's concurrence in Davis, all of the cases since then have said, you don't get to deny this just because the government has to frankly do its job. If it's going to offer evidence, it's got to be able to prove it. And I know my time is up, but I just want to point out the government in their discussion of the factual issue has really cherry-picked their best facts. It's not a showing that this was frivolous. I mean, Seth O'Brien said that Rhodes was going to sell the heroin that he got that day. Rhodes wasn't found until 7 30 the next night. There's a huge time gap. When he's awake, he's sees him eating food. His stepdad hears him. There's lots of things that would suggest the fact that there's still drugs. The government says, and the court said he didn't have another source of supply and yet there's drugs found in his room. If he's used these drugs, we know he used all the crack. The government witness says that. Where are the drugs coming from that are in his room? The government's exhibit that was submitted during the sentencing is in part an evidence that he was using heroin. He was using heroin regularly with three guys down the street all within walking distance. There was a lot to talk about in this. This was not a frivolous denial of anything. Thank you, Judge. Thank you. Thank you very much. Our thanks to both counsel. The case is taken under advisement.